WOLGIN v. WOLGIN

[217 N.C. App. 278 (2011)]

━━━━━━━━━━

NEAL B. WOLGIN, Plaintiff v. ELIZABETH HESLIP WOLGIN, Defendant

No. COA11-148

(Filed 6 December 2011)

**1. Appeal and Error—jurisdiction—notice of appeal—timing**

The Court of Appeals had jurisdiction over a child custody case where an order modifying custody was entered; defendant filed a Rule 59 Motion for a new trial, tolling the time for appeal; the trial court rendered (but did not enter) a denial of the motion for a new trial; defendant entered notice of appeal from the cus-

tody order; the trial court entered a written order denying the motion for a new trial; and defendant gave notice of appeal from that order.

## 2. Trials—two-day limit for trial—not arbitrary

The trial court did not abuse its discretion in a child custody matter by denying defendant's motion for a new trial where defendant argued that the trial court had placed arbitrary time limits on the presentation of evidence. The length of the trial was discussed at the pretrial conferences, both parties agreed to a two-day trial, and defendant did not object at the close of her evidence to the limits enforced by the court. Moreover, the court was presented with adequate evidence to make a determination as to whether a custody modification was appropriate.

## 3. Evidence—cumulative exhibits—control—no abuse of discretion

The trial court did not abuse its discretion in a custody case by accepting exhibits which consisted of 562 e-mails but indicating that it would give them due consideration without reading each one.

## 4. Child Custody and Support—change in custody—disagreements between parties

The trial court did not err by relying on continual disagreements between the parties to change the physical custody provisions of a permanent custody order. Disagreements alone do not support a substantial change in circumstances, but the trial court here also considered the effect of those disagreements on the children, including the children's mental health, religious growth, and extracurricular activities

## 5. Child Custody and Support—custody—change—factors

The trial court did not err in a child custody action in the factors it considered in concluding that a change of physical custody was warranted. Case law did not support defendant's argument that her relocation and remarriage, a party's continued fitness, and the children's school transfer were impermissible factors.

Appeal by Defendant from orders entered 4 May 2010 and 8 September 2010 by Judge William A. Marsh in Durham County District Court. Heard in the Court of Appeals 25 May 2011.

*Law Office of Laurel E. Solomon, PLLC, by Laurel E. Solomon, for Plaintiff-Appellee.*

*Lewis Phillips Hinkle, PLLC, by Elliot I. Brady, for Defendant-Appellant.*

BEASLEY, Judge.

Defendant appeals the trial court's orders modifying physical custody and denying her Rule 59 Motion for a New Trial. For the following reasons, we affirm.

On 19 April 2007, the trial court entered a consent order for permanent custody awarding joint legal custody with primary physical custody to Defendant and secondary physical custody to Plaintiff. On May 13 2009, Plaintiff filed a motion to modify the 2007 permanent custody order (2007 order). Following a two-day hearing, the trial court entered an order modifying the 2007 order, and awarded primary physical custody to Plaintiff on 4 May 2010. On 14 May 2010, Defendant filed a Motion for a New Trial pursuant to N.C. Rules of Civil Procedure Rule 59. Before the trial court entered a written order on Defendant's Motion for a New Trial on 23 July 2010, Defendant filed notice of appeal from the custody order. On 8 September 2010, the trial court entered a written order denying Defendant's Motion for a New Trial and Defendant filed notice of appeal from the trial court's denial of her Motion for a New Trial that same day.

[1] Before we address Defendant's appeal on its merits, we are required to determine whether our Court properly has jurisdiction in this matter.

Pursuant to N.C. Rules of Appellate Procedure Rule 3(c), when a party enters notice of appeal in civil actions,

a party must file and serve a notice of appeal:

. . . .

(2) within thirty days after service upon the party of a copy of the judgment if service was not made within that three day period; provided that

(3) if a timely motion is made by any party for relief under Rule[] . . . 59 of the Rules of Civil Procedure, the thirty day period for taking appeal is tolled as to all parties until entry of an order disposing of the motion and then runs as to each party from the date of entry of the order or its untimely service upon the party. . . .

Additionally, our Supreme Court has held that

> the general rule is that when an appeal is taken from the district court the latter court is divested of jurisdiction, except to take action in aid of the appeal, until the case is remanded to it by the appellate court. Hence during the pendency of an appeal it is generally held that the district court is without power to grant relief under Rule 59 [.]

*Wiggins v. Bunch*, 280 N.C. 106, 111, 184 S.E.2d 879, 881 (1971). Generally, "[t]his Court is without authority to entertain appeal of a case which lacks entry of judgment." *Abels v. Renfro Corp.*, 126 N.C. App. 800, 803, 486 S.E.2d 735, 737 (1997). A judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court. N.C. Gen. § 1A-1, Rule 58 (2009). In *Abels*, our Court announced an exception to this general rule which applies when judgments are rendered, but have not yet been entered. "[W]e believe rendering of an order commences the time when notice of appeal *may* be taken by filing and serving written notice[.]" *Id.* at 804, 486 S.E.2d at 738 (citing N.C.R. App. P. 3 (c)).

When Defendant *sub judice*, filed the Motion for a New Trial pursuant to Rule 59, the time for filing notice of appeal was tolled. Defendant first entered notice of appeal on 23 July 2010, after the trial court orally denied the motion on 22 July 2010, but before the trial court entered its written judgment on the motion. Though the trial court rendered its oral judgment on 22 July 2010, the entry of the notice of appeal on 23 July 2010 from the order entered 4 May 2010 preserved this issue for appellate review pursuant to *Abels*. Also, Defendant gave notice of appeal from the order denying the Rule 59 Motion on 8 September 2010, the same day that the written order denying of the Rule 59 Motion was entered, and this appeal is also properly preserved. *See Abels*, 126 N.C. App. at 804, 486 S.E.2d at 738 ("the full time, N.C.R. App. P. 3(c), for appeal as to both the original judgment and denial of the motion commenced to run and [must] be computed from the *entry* of [the trial court's] order [.]" (internal citations omitted)). We now address the appeal on its merits.

When the trial court entered the 2007 Order, both parties and the minor children resided in Durham County. In 2007, Hannah, five-years-old, was in kindergarten at Creekside Elementary in Durham and David, two-years-old, was in pre-school at Greenwood School in Durham. On 9 May 2009, Defendant remarried and she and the children relocated to Wake County. In April 2009, Defendant enrolled the

children at Laurel Park Elementary School, a year-round school in Wake County, which was set to begin on 7 July 2009. Plaintiff objected to the transfer and sought to keep the children enrolled in the Durham County Public School System. The parties corresponded several times concerning Defendant's relocation and her wish to change the children's school. The parties could not reach an amicable agreement. Subsequently, in May 2009, Defendant filed a "Request for Transfer" to remove the children from the Durham County Public School System to enroll them in the Wake County Public School System. Defendant did not inform Plaintiff that she filed the "Request for Transfer", though she had several e-mail discussions with him prior to enrolling the children.

On 13 May 2009, Plaintiff filed a motion to modify child custody, for appointment of a parenting coordinator, and for a preliminary injunction. In the motion, Plaintiff argued, *inter alia*, that Defendant's unilateral decision to enroll the children in a Wake County Public School warranted a modification of the 2007 Order. After a two-day hearing, the trial court entered a modification of the 2007 Order by written order entered 4 May 2010 (2010 Order), which changed Defendant's status as primary physical custodian and awarded both parties shared physical custody.

Defendant raises several issues on appeal and we address each in turn.

## I. Rule 59 Motion for New Trial

**[2]** First, Defendant contends that the trial court abused its discretion by denying her Motion for a New Trial, which urged the court to re-open the evidence and allow Defendant to complete her testimony because the trial court placed arbitrary time limits on the presentation of evidence. We disagree.

It is well settled that "a motion for new trial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a manifest abuse of that discretion." *Kinsey v. Spann*, 139 N.C. App. 370, 372, 533 S.E.2d 487, 490 (2000). Similarly, "the manner of the presentation of evidence is a matter resting primarily within the discretion of the trial judge, [and] his control of the case will not be disturbed absent a manifest abuse of discretion." *State v. Harris*, 315 N.C. 556, 562, 340 S.E.2d 383, 387 (1986) (citations omitted). Pursuant to N.C. Gen Stat. § 8C-1, Rule 611(a) (2009), the trial court has the authority to

exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Here, the trial court did not arbitrarily impose limitations on the presentation of evidence where (1) the length of the trial was discussed at pre-trial conferences and both parties agreed to a two-day trial; (2) the court made inquiry concerning the ability of both parties to present evidence within a two-day time frame and neither party objected during pre-trial conferences; (3) the court made several references to the time constrictions during the trial; and (4) at the close of Defendant's evidence, Defendant made no objection to time limits enforced by the trial court on the second day of trial.

Defendant relies on *Mishler v. Mishler*, 90 N.C. App. 72, 367 S.E.2d 385 (1988), to support her argument that the two-day trial limit was erroneous. Although *Mishler* addresses the court's authority to limit the presentation of evidence, the case *sub judice* is distinguishable.

In *Mishler*, our Court, in an equitable distribution case, held that the trial court erred where it limited the plaintiff's testimony as well as defendant's cross examination of the plaintiff on the issue of personal debt. *Id.* Unlike *Mishler*, the trial court *sub judice*, was presented with adequate evidence to make a determination as to whether modification of the custody order was appropriate. Therefore, Defend-ant's reliance on *Mishler* is not persuasive and we conclude the trial court did not abuse its discretion by designating two days for trial. This argument is overruled.

**[3]** Defendant also asserts that the trial court erred by refusing to review tall of the evidence. There is no merit to Defendant's argument.

Rule 403 of the North Carolina Rules of Evidence states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2009). "The exclusion of evidence under Rule 403 is a matter left to the sound discretion of the trial judge, and we will reverse a Rule 403 decision of the trial court only when the decision is arbitrary or unsupported by reason." *State v. Brockett*, 185 N.C. App. 18, 23, 647 S.E.2d 628, 633 (2007).

At trial, Defendant introduced Exhibits 13 and 14 which consisted of 562 e-mail correspondences. Defendant contends that the trial court's express admission that it would not review each e-mail is an abuse of the court's discretion. The trial court accepted the exhibits into evidence but admitted that while it would not read each e-mail introduced into evidence, it would give the e-mails "due considera- tion." The trial court further clarified its position by stating, "I will be able to ascertain the tone and tenor by looking at a representative portion of the e-mails so don't think I'm not going to look at them at all." Here, the trial court properly exercised its authority to limit the presentation of cumulative evidence. Accordingly, the trial court did not abuse its discretion by reviewing a representative portion of the e-mail correspondences and Defendant's argument is overruled.

## II. Custody Modification Order

**[4]** Next, Defendant contends that "the trial court committed reversible error in relying on continual disagreements between the parties to change physical custody provisions of a permanent custody order from primary physical to 50-50 when the parties already had joint legal custody." Defendant further argues that the trial court failed to make a determination as to "whether and how the disagree- ments affect the welfare of the children." We disagree.

Our Supreme Court has held that "trial courts are vested with broad discretion in child custody matters." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003). "When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). "[T]he trial court's findings of fact are conclusive if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Raynor v. Odom*, 124 N.C. App. 724, 729, 478 S.E.2d 655, 658 (1996) (citations omitted).

"It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a sub- stantial change of circumstances affecting the welfare of the child warrants a change in custody." *Shipman*, 357 N.C. at 473, 586 S.E.2d at 253 (internal quotation marks and citations omitted). Generally,

there must be evidence establishing a "nexus" between the changes and the welfare of the minor child. *Id.* at 478, 586 S.E.2d at 255.

Defendant asserts that the trial court erred in making Finding of Fact 16(B) which states,

> [t]he 2007 Order contemplated that the parties would be able to work out disagreements related to the children through co-parenting therapy. This has proven not to be true, and decisions regarding the children have not been made as a result, or the Defendant has made decisions unilaterally by default. As a result, Defendant unilaterally chose the children's current school, Hannah is still not in therapy, the children have missed celebrations of important Jewish holidays, and Hannah and David are attending dance and soccer at locations that are not conducive to Plaintiff's involvement, all of which affect the welfare of the minor children.

Disagreements "alone" between the parties, even with the appointment of a co-parenting therapist, do not constitute a substantial change in circumstances. *See Ford v. Wright,* 170 N.C. App. 89, 93, 611 S.E.2d 456, 460 (2005) (Disagreements **alone** do not support a substantial change in circumstance. The trial court must make "specific findings of instances where the parties' failure to communicate subsequent to the prior custody order had affected the welfare of the child."). (emphasis added).

Defendant argues that because the trial court found in Finding of Fact Number 16(B), that the parties had disagreements which impacted the children and Defendant made unilateral decisions, the trial court changed custody to punish Defendant. Defendant's argument is meritless.

> Child custody cannot be used as a tool to punish an uncooperative parent. Standing alone, such interference would normally only warrant a contempt citation. However, where, as here, such interference becomes so pervasive as to harm the child's close relationship with the noncustodial parent, there can be a conclusion drawn that the actions of the custodial parent show a disregard for the best interests of the child, warranting a change of custody.

*Woncik v. Woncik,* 82 N.C. App. 244, 248, 346 S.E.2d 277, 279 (1986).

The trial court did not merely consider the parties' disagreements but also considered the effect of those disagreements on the children

and their well-being. Defendant fails to challenge Finding of Fact 7 which states that "[t]he parties have agreed that they shall discuss with each other all major decisions concerning the Minor Children and that they will engage the services of a co-parenting therapist to help them with such decisions, including, but not limited to school issues, health issues, and unusual schedule changes."

Defendant also does not challenge Finding of Fact 15(D) which provides:

On May 15, 2009, the Defendant filed a Request for Transfer for each of the minor children with the Wake County Public School System. The Defendant did not advise the Plaintiff in advance of her filing of said document and, in fact, she waited until after the transfer had been granted to inform Plaintiff of same. In these Requests for Transfer documents, and accompanying letter, Defendant listed six potential schools in rank order of her preference. . . .

The trial court also found in Finding of Fact 15(E) that rather than directly discussing Plaintiff's preference with him that the children attend school in Durham,

[t]he Defendant, through counsel, contacted the Durham County Office of Student Assignment on or about April 1, 2009, and requested that said Office notify her if the Plaintiff applied for a transfer of the children to the Creekside Elementary School attendance zone, indicating that she intended to enroll the children in Wake County Schools. She specifically requested that she be permitted to submit information in opposition to any such application of the Plaintiff.

The Defendant did not discuss her request with Plaintiff in advance of her submission, and had not mentioned two of the schools to Plaintiff as schools she was considering.

The trial court, in making these findings of fact, not only considered Defendant's failure to discuss her selection of the children's new school with Plaintiff, but in Findings of Fact 15 (I), (J), and (K), the trial court found that the change in school had a detrimental effect on Hannah's social adjustment, as her teachers at Creekside had begun to successfully address improvements in Hannah's social interaction with her peers.

In Finding of Fact 15 (L), the trial court found that the therapist, Ilene Sperling, informed the parties that

"[t]he themes of [Hannah's] difficulties are related to the lack of communication between you both as parents and the challenges you are experiences [sic] with navigating custody issues and parenting together. The ability for you both to begin to resolve your communication together enough to create a custody agreement that you both support and agree on will help to remove Hannah from her questions and feelings of being in between parental conflict. . . ." However the Defendant ultimately changed her mind by March of 2009 and decided that Ilene Sperling was not qualified to provide therapy for Hannah. Plaintiff maintained that Hannah needed and would benefit from therapy. Hannah has never returned to therapy since the parties have not been able to agree on how to address this issue.

Clearly, the trial court did not conclude that a substantial change of circumstances existed merely because of the parties' disagreements, but instead found that the parties' disagreements had a profound effect on Hannah's mental health by Defendant's refusal to allow a therapist to address Hannah's mental health needs.

Further, as a result of the parties' inability to effectively communicate for the benefit of the children's welfare, the trial court found in Findings of Fact 15 (N), (O), (P), and (Q), that this inability hindered the children's religious growth. While

the trial court cannot base its findings on the preferability [sic] of any particular faith or religious instruction, . . . [t]he welfare of the child is the paramount consideration which must guide the Court in exercising this discretion. Thus, the trial judge's concern is to place the child in an environment which will best promote the full development of his physical, mental, moral and spiritual faculties. . . .

*Dean v. Dean*, 32 N.C. App. 482, 483, 232 S.E.2d 470, 472 (1977) (internal quotation marks and citations omitted).

The children's lack of participation in holiday celebrations was not a change of circumstances from the 2007 Order. The schedule from the 2007 Order awarded Defendant physical custody during the specified holidays. However, while there was no actual change in circumstances from the 2007 Order as to Plaintiff's religious observances in Finding of Fact 15 (N), in conjunction with Findings of Fact 15 (O) and (P) which consider the children's "increased age" and ability "to more fully participate in and understand [religious] activities" and

"[t]he parties' inability to cooperate to change their schedule" to accommodate religious observances, the substantial change in circumstances is supported by the evidence.

The trial court further found in Finding of Fact 15(T) that the children's participation in extracurricular activities at locations that were inconvenient for Plaintiff constituted a substantial change in circumstances that affect the welfare of the children. We agree.

We have held that "[t]he welfare of the children is the determining factor in the custody proceedings[.]" *In re Poole*, 8 N.C. App. 25, 29, 173 S.E.2d 545, 548 (1970). In *Shipman*, our Supreme Court held that "before a child custody order may be modified, the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child, and flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection." *Shipman*, 357 N.C. at 478, 586 S.E.2d at 255. The general rule is applied unless the substantial change of circumstances are determined to be self-evident. *Id.*

In choosing the location of extracurricular activities, the trial court found,

> [s]ince her relocation to Wake County, the Defendant has enrolled Hannah in dance and David in soccer in Wake County without first discussing this with the Plaintiff or soliciting his input. As a result, the children are attending these activities at locations which are even further from the Plaintiff's home than the Defendant's home or their school. When Plaintiff asked the Defendant whether she would consider a location which would work better for him, she informed him that she had already done all of the research and these were the most viable options.

As the trial court had, in its 2007 Order, considered that visitation with Plaintiff was in the children's best interest, the fact that Defendant was unyielding in determining the location and time of extracurricular activities focuses on the inconvenience to Plaintiff only to the extent that Plaintiff's time spent with the children would necessarily be curtailed (*i.e.*, for Plaintiff's travel time to the event). As the children benefit from time spent with Plaintiff, the trial court properly determined that Defendant's arrangements are not in the best interest of the children.

[5] In Defendant's final argument, she contends that the trial court committed reversible error by considering legally improper factors to

WOLGIN v. WOLGIN

[217 N.C. App. 278 (2011)]

support its conclusion that a change of the physical custody provisions of the permanent custody order were warranted. We disagree.

Our Court has not set out "permissible factors" in determining whether there has been a substantial change in circumstances warranting a modification of a custody order, as Defendant suggests. Instead, we have held:

> courts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child.

*Pulliam v. Pulliam*, 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998).

Defendant argues that the trial court's consideration of factors such as her relocation and remarriage, a party's continued fitness, and the children's school transfer are "impermissible factors." Our case law does not support this argument. In *Shipman*, our Supreme Court announced several factors that can be considered in determining whether a substantial change of circumstances has occurred. Factors include, but are not limited to (1) "a move on the part of a parent"; (2) the remarriage of a parent; (3) "a parent's cohabitation"; and (4) a child's mental health. *Shipman*, 357 N.C. at 478, 586 S.E.2d at 256. Moreover, our Courts have broad discretion, as stated in *Pulliam*, in weighing evidence that may impact the welfare of minors. We reject the notion that the trial court should have been restricted to certain "permissible factors" in its determination. Therefore, we conclude there was no error as to the factors that the trial court used to make its determination.

Defendant further argues that because she and her husband moved to Wake County, regardless of Plaintiff's wishes to keep the children enrolled in the Durham School System, the children's residency with Defendant necessitated the school system change. As school systems are accustomed to accommodating children who are in the joint custody of their parents and to accommodate children with mental or emotional problems, it is not uncommon for school systems to accommodate transfer requests.[1]

---

1. 4132.2 Hardship Transfer

The Superintendent or designee may grant transfer requests in cases of substantial hardship if the Superintendent or designee finds that any of the following exist:

**J.T. RUSSSELL & SONS, INC. v. SILVER BIRCH POND, LLC**

[217 N.C. App. 290 (2011)]

In summary, the trial court did not err in denying Defendant's Motion for a New Trial. Further, the trial court did not err in limiting the presentation of evidence. We also hold there was no error as to the factors used by the trial court in determining whether there was a substantial change in circumstances. Finally, we affirm the trial court's order because the findings of fact support a substantial change in circumstances warranting modification of custody.

Affirmed.

Judges BRYANT and GEER concur.

---

A. Serious physical, mental or emotional problems. The student must submit an affdavit from the student's physical, psychologist, or psychiatrist to support a request made under this ground.

. . . .

D. Other extreme or unusual circumstances that affect the student's academic achievement and/or behavior at school.

www.dpsnc.net, Student Transfers